United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

YODLEE, INC.,

              Plaintiff,

  v.

CASHEDGE, INC.,

              Defendant.

_____/

No. C 05-01550 SI

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY BASED ON
INDEFINITENESS**

     Defendant CashEdge's motion for summary judgment based on invalidity is set for hearing on December 1, 2006.  Pursuant to Civil Local Rule 7-1(b), the Court determines the matter is appropriate for resolution without oral argument, and VACATES the hearing.  For the reasons set forth below, the Court DENIES the motion.  (Docket # 77)

**BACKGROUND**

     Plaintiff Yodlee, Inc., brought suit against defendant CashEdge, Inc., alleging infringement of six patents; CashEdge subsequently brought its own complaint for declaratory judgment of non-infringement and invalidity, adding three additional Yodlee patents to the suit.  The nine patents now at issue are:  United States Patent Nos. 6,199,077 ("the '077 patent"), 6,633,910 (" the '910 patent"), 6,510,451 ("the '451 patent"), 6,802,042 ("the '042 patent"), 6,412,073 ("the '073 patent"), 6,594,766 ("the '766 patent"), 6,317,783 ("the '783 patent"), 6,567,850 ("the '850 patent"), and 6,405,245 ("the '245 patent").  Broadly speaking, the nine patents all deal with systems and methods to deliver personal information culled from multiple Internet sources to one central web site.  For example, the technologies at issue allow for an end user to monitor information from several types of accounts held with different financial institutions on one website, without having to individually log into and navigate through each

individual website associated with each financial institution with which the user has an account.

With the instant motion for summary judgment, defendant CashEdge seeks to invalidate many of the claims of the '245, '073, '451 and '766 patents, as indefinite pursuant to 35 U.S.C. § 112 ¶ 2.

**LEGAL STANDARD**

**1.    Summary Judgment**

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  If the moving party meets this burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"Rule 56(c) requires the moving party to show not only the absence of a disputed issue of fact but also that he is entitled to judgment as a matter of law . . . [T]herefore, the court must . . . consider the burden of proof on the issue and where it will rest at trial . . . Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quotations omitted).

The evidence presented by the parties in support of or opposition to a motion for summary judgment must be admissible. *See* Fed. R. Civ. P. 56(e).  In evaluating this evidence, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

**United States District Court**

For the Northern District of California

**2.     Invalidity and Indefiniteness**

A party seeking to invalidate a patent must overcome a presumption that the patent is valid. *See* 35 U.S.C. § 282; *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Hibritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986). This presumption places the burden on the challenging party to prove the patent's invalidity by clear and convincing evidence. *United States Gypsum Co.*, 74 F.3d at 1212.

35 U.S.C. § 112 requires that claims be particular and distinct. "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. The primary purpose of the requirement of definiteness is to provide warning to those skilled in the art of what will constitute infringement. *See United Carbon Co. v. Binney Co.*, 317 U.S. 228, 236 (1942). The definiteness standard is one of reasonableness under the circumstances, requiring that, in light of the teachings of the prior art and the invention at issue, the claims apprise those skilled in the art of the utilization and scope of the invention with a reasonable degree of precision and particularity. *See Shatterproof Glass Corp. v. Libbey-Owens Corp.*, 758 F.2d 613, 624 (Fed. Cir. 1985). "A determination of indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims [, and] therefore, like claim construction, is a question of law." *Amtel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999).

**DISCUSSION**

Defendant CashEdge argues that a majority of the patent claims at issue are invalid, as a matter of law, because they are indefinite. According to defendant, they are "mixed method-apparatus" claims, which the Federal Circuit found to be indefinite in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).

In *IPXL*, the Federal Circuit agreed with the Board of Patent Appeals and Interferences of the PTO, "that reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2." *Id.* at 1384. The court cited and followed a decision by the Board of Patent Appeals and Interferences, *Ex parte Lyell*, 17 U.S.P.Q.2d 1548 (BPAI 1990), which had

invalidated as indefinite a claim whose preamble described the claim as "an automatic transmission tool . . . and method for using same."[1]   The Federal Circuit's *IPXL* case concurred with the analysis, explaining:   "[A]s a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus."   *Id.*

Based on this rule, the Federal Circuit affirmed the district court's invalidation of one of the claims at issue, claim 25, which stated:

> The system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, *and the user uses* the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*Id.* (quoting patent) (emphasis added).   The circuit court stated:

> Thus, it is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction.  Because claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.

*Id.*

Several recent attempts to invalidate patent claims based on the *IPXL* mixed method-apparatus rule have been rejected, based on critical differences in the challenged claim language.  For example,

---

[1]   The claim invalidated in *Ex parte Lyell* read as follows:

2.  *An automatic transmission tool* in the form of a workstand *and method for using same* comprising:
a support means,
and [sic] internally splined sleeve affixed upright to said support means,
a threaded adjustment bolt threadably engaged through a hole in the bottom of said support means and projecting upward through said support frame into said sleeve,
and further comprising the steps of
1. positioning the output end of an automatic transmission onto said upright sleeve,
2. removing the internal components of said automatic transmission from the casing of said transmission,
3. repairing and replacing said internal components back into said casing, and
4. adjusting said internal components for fit and interference by means of adjusting said upwardly projecting adjustment bolt.
17 U.S.P.Q.2d at 1549 (emphasis added).

United States District Court

For the Northern District of California

in *Collaboration Properties, Inc. v. Tandberg ASA*, 2006 U.S. Dist LEXIS 42465 at *1 (N.D. Cal. June 23, 2006), Judge Patel rejected defendants' attempt to invalidate the following claim:

> 1. A teleconferencing system for conducting a teleconference among a plurality of participants, comprising:
>
> (a) a plurality of workstations, each workstation having first and second monitors and in communication with audio and video (AV) capture capabilities;
>
> (b) a data path in communication with the plurality of workstations, over which data can be shared among the plurality of participants; and
>
> (c) an AV path in communication with the plurality of workstations, along which AV signals, representing video images and spoken audio of the participants, can be carried;
>
> wherein, the system is *configured to* reproduce images, based on data signals shared along the data path, on at least two first monitors so as to permit participants associated with the workstations having the two first monitors to interactively share the reproduced images and reproduce participant video images, based on AV signals carried along the second path, on at least two second monitors.

*Id.* at *15-*16 (emphasis added).  Defendants argued that because the claim required the system to be "configured," it improperly "injects method steps into the purported system claim," and was therefore invalid under *IPXL*.  *Id.* at *16.  Judge Patel rejected defendants' argument, and distinguished *IPXL*, stating:

> The problematic claim language in *IPXL Holdings* required that "the user uses the input means" to perform certain functions – an act.  The language in the claims of the asserted patents, in contrast, requires that the system be "configured to" perform certain function when it is used – a statement of functionality.

*Id.*  The *IPXL* rule does not apply "where the claims require capability, but not actual use."  *Id.* at *19.

In *Collegenet, Inc. v. XAP Corp.*, 2006 U.S. Dist. LEXIS 49760 at *1040 (D. Or. July 17, 2006), the defendant sought to invalidate several claims based on the *IPXL* rule.  In rejecting the defendant's arguments, the district court explained the difference between an improper mixed method-apparatus claim, and a wholly appropriate "functional limitation."  *See id.* at *1062-63.  "A 'functional limitation' is 'an attempt to define something by what it does, rather than by what it is.'"  *Id.* at *1062 (quoting *Manual of Patent Examining Procedure* § 2173.05(g) (8th Ed., 2001, rev. 2005)).  "[T]here is nothing inherently wrong with defining some part of an invention in functional terms.  Function language does not, in and of itself, render a claim improper."  *Id.* (quoting *Manual* § 2173.05(g)).

Plaintiff argues that, as in *Collaboration Properties* and *Collegenet*, the patents at issue here

merely claim devices with functional limitations, and do not constitute invalid mixed method-apparatus

claims, as in *IPXL*.  The Court agrees.  Unlike *IPXL*, the patents at issue here do not claim both an

apparatus and a method for using that apparatus.  The claims simply use active language to describe the

*capability* of the apparatuses; they do not claim the activity itself.

For example, defendant first attacks claim 8 of the '245 patent, which states:

A computer-readable storage device storing instructions that upon execution cause a processor to automatically access personal information associated with an end user, wherein the personal information is stored on a personal information provider by performing the steps comprising of:

(a)     presenting on a client computer associated with the end user and in communication with the personal information provider via a network a representation of personal information and a link corresponding to the personal information stored on the personal information provider;

(b)     *upon activation of the presented link*, downloading an application to the client computer, wherein the downloaded application upon execution on the client computer performs the steps of:

    (i)     connecting to the personal information provider;

    (ii)    navigating to the personal information on the personal information provider using a protocol for instructing the client computer how to access the personal information via the network, the personal information accessible to the client computer using the protocol also being accessible by the end user via the network independently of automatic access by the processor of personal information caused by execution of the instructions; and

    (iii)   presenting the personal information to the user of the client computer.

Patent '245 at 18:21-47 (emphasis added).

Defendant argues that because of paragraph (b), describing "activation of the presented link," "it cannot be known whether infringement . . . occurs when the computer-readable storage device is manufactured or sold, *or* whether infringement occurs when a user activates such a system's presented link, *or both*.  Moreover, infringement of these claims can only take place by virtue of human interaction. . . ." Mot. at 8:21-24 (emphasis in original).  Defendant's argument, however, is incorrect. The claim describes what happens "upon activation of the presented link."  It does not seek to patent activation of the link; it seeks only to patent a device which performs certain functions if and when the link is activated.  Infringement occurs when a device that has the capability of performing the steps described under paragraph (b) is manufactured and sold.  Whether a user actually activates the link

presented by the infringing device is of absolutely no import.  Similarly, the process initiated by activating the link need never take place.  If the device presents such a link, and activating such link would initiate the process described under paragraph (b), the device infringes.

A simple analogy would be a claim which physically describes a pair of scissors designed to cut paper, then states, "upon opening and closing the sharp edges of the scissors on a piece of paper, the paper is cut." The language describes the capability of the scissors; it is function language. Infringement occurs upon the manufacturing and sale of scissors that are capable of cutting paper.  The *IPXL* rule would apply only if the patent claimed the physical description of the scissors, then stated within the same claim: "and the method of using said scissors to cut a piece of paper." The claims at issue here are analogous to the former example. They describe what the apparatuses do, when used a certain way. They do not claim *use* of the apparatuses.  Thus, they do not "recit[e] both an apparatus and a method of using that apparatus." *IPXL*, 430 F.3d at 1384.

All of the claims challenged by defendant, like claim 8 of patent '245, place functional limitations on the apparatuses by describing the capabilities of the apparatuses.  They are not invalid mixed method-apparatus claims.  Claim 9 of patent '245 describes "[a] system for automated access to personal information associated with an end user."  Patent '245 at 18:48-49.  Like claim 8, it describes what the system does when "the presented link" is activated. *Id.* at 19:3.  It does not require that the link be activated; it merely describes the function and capability of the system.

Similarly, claim 1 of the '073 patent describes the physical components of an "Internet Portal" apparatus, then states:

> wherein the Portal, in response to log-on by a user from a user's Internet-connected appliance, presents a secure and personalized page for the user, the personalized page having a list of Internet destinations, pre-selected by the user and enabled by hyperlinks, wherein, upon invocation of a hyperlink by the user, the portal invokes a URL for the destination, and upon connection with the destination, transparently provides any required log-on information required for user access at the destination.

Patent '073 at 10:2-13.

Claim 18 of the '073 patent describes the physical aspects of an "Internet Portal software application" apparatus, then states:

> wherein . . . upon invocation of a hyperlink by the associated user, the portal software invokes a URL for the destination, and upon connection with the destination,

United States District Court

For the Northern District of California

transparently provides any required log-on information for user access at the destination.

*Id.* at 11:11-24.

Claim 28 of the '073 patent claims an "Internet Portal software application" apparatus, then states the function of the apparatus:

> wherein the portal application interacts with a browser plug-in executing on a subscriber's Internet-connected appliance, such that, when the user invokes a destination, pre-selected by the associate user, from the browser, accessing the associated user's personal page, the portal software cooperates with the browser plug-in to furnish the data necessary for a successful log-on transparent to the user.

*Id.* at 11:59-12:6.

Claim 1 of the '451 patent describes the physical components of an "Internet portal system," then states its function:

> wherein the software, in response to initiation of a multi-component task specified by the client, transparently to the client, and without interaction from the client defines the component tasks based on pre-programmed client-related data, identifies third-party Internet Web sources needed for completion of the tasks, performs and manages interaction with the identified Web sites, gathering results of the interactions, integrates the gathered results, and communicates final results to the client at the client station.

Patent '451 at 9:50-10:3.

Claims 1 and 11 of the '766 patent similarly describe the physical components of an "Internet Portal" and an "Internet Portal application," then describe the functions of those apparatuses – i.e., what happens when the user takes certain actions.  Patent '766 at 10:10-28, 10:53-11:6.

None of these claims are invalid under the *IPXL* rule.  The claim in *IPXL* purported to cover both "[t]he system," and the situation in which "the user uses" the system.  430 F.3d at 1384.  In *Ex parte Lyell*, the claim covered both "a workstand and method for using same."  17 U.S.P.Q.2d at 1549.  In those cases, therefore, "a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus."  *IPXL*, 430 F.3d at 1384.  Here, there is no such confusion.  The claims at issue do not cover the actions taken by users of the portals and software, nor do they claim the reactions of the portals and software to user input.  Instead, they describe how the software and portals react to certain input by users, as functional limitations of the software and portals.  Infringement occurs only through manufacturing and sale of systems which have the described

functionality and capacity. *IPXL* does not apply to these claims. As Judge Patel stated, the *IPXL* rule does not apply "where the claims require capability, but not actual use." *Collaboration Props.*, 2006 U.S. Dist. LEXIS 42465 at *19.

Plaintiff's patents enjoy a presumption of validity, which may only be overcome by clear and convincing evidence. In this instance, defendant has not met its burden of establishing that the claims at issue fail to provide warning to those skilled in the art of what will constitute infringement. *See United Carbon Co. v. Binney Co.*, 317 U.S. 228, 236 (1942).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court DENIES defendant's motion for summary judgment of invalidity. (Docket No. 77)

**IT IS SO ORDERED.**

Dated: November 29, 2006

_____
SUSAN ILLSTON
United States District Judge