IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

YODLEE, INC.,

      Plaintiff,

  v.

CASHEDGE, INC.,

      Defendant.

No. C 05-01550 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS**

Defendant CashEdge, Inc., has filed a motion for leave to file a First Amended Answer and Counterclaims. Hearing on the motion is currently scheduled for June 1, 2007. Having considered the papers filed by the parties, the Court determines that the motion is suitable for resolution without oral argument, and pursuant to Civil Local Rule 7-1(b), hereby VACATES the May 18, 2007 hearing. For the following reasons, the Court GRANTS defendant's motion.[1]

**BACKGROUND**

Plaintiff Yodlee, Inc., brought suit against defendant CashEdge, Inc., alleging infringement of six patents; CashEdge subsequently brought its own complaint for declaratory judgment of non-infringement and invalidity, adding three additional Yodlee patents to the suit. The nine patents now at issue are: United States Patent Nos. 6,199,077 ("the '077 patent"), 6,633,910 (" the '910 patent"), 6,510,451 ("the '451 patent"), 6,802,042 ("the '042 patent"), 6,412,073 ("the '073 patent"), 6,594,766 ("the '766 patent"), 6,317,783 ("the '783 patent"), 6,567,850 ("the '850 patent"), and 6,405,245 ("the

---

[1] The Court GRANTS Yodlee's motion for leave to file a sur-reply [Docket No. 159].

1  '245 patent"). Broadly speaking, the nine patents at issue deal with systems and methods to deliver
2  personal information culled from multiple Internet sources to one central web site. For example, the
3  technologies at issue allow for an end user to monitor information from several types of accounts held
4  with different financial institutions on one website, without having to individually log into and navigate
5  through each individual website associated with each financial institution with which the user has an
6  account.

7  On July 7, 2006, the Court issued a claim construction order. On November 29, 2006, the Court
8  denied CashEdge's motion for summary judgment of invalidity based on indefiniteness. On February
9  12, 2007, CashEdge filed its Final Invalidity Contentions. On March 13, 2007, CashEdge changed
10 counsel. On March 20, 2007, Yodlee moved for summary judgment of infringement. That motion is
11 currently scheduled to be heard in June 2007. On April 25, 2007, CashEdge filed a motion for leave to
12 amend its Final Invalidity Contentions. The Court granted that motion. On May 15, 2007, CashEdge
13 filed the instant motion for leave to file a First Amended Answer and Counterclaims. The current fact
14 discovery cutoff is July 13, 2007, the deadline to file dispositive motions is September 7, 2007, and trial
15 is scheduled to begin on November 17, 2007.

## LEGAL STANDARD

17 Under Federal Rule of Civil Procedure 15, a plaintiff may amend its complaint "once as a matter
18 of course before a responsive pleading is served," and "only by leave of court or by written consent of
19 the adverse party" thereafter. Fed. R. Civ. P. 15(a). Leave to amend "shall be freely given when justice
20 so requires." *Id.*; *see also Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.
21 2001) ("We have stated that this policy is to be applied with extreme liberality.") (internal quotation
22 marks omitted). Rule 15 embodies a strong federal policy in favor of deciding cases on their merits.
23 Thus, leave to amend is freely given unless the opposing party can establish a factor such as "undue
24 delay, bad faith or dilatory motive on the part of the moving party, repeated failure to cure deficiencies
25 by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance
26 of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230
27 (1962); *see also Owens*, 244 F.3d at 712 ("In determining whether leave to amend is appropriate, the
28 district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the

2

opposing party, and/or futility.'") (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

"[T]he nonmovant bears the burden of showing why amendment should not be granted." *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986). "The single most important factor is whether prejudice would result to the nonmovant." *Id.* (citing cases). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." *Id.* (quoting *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry*, 648 F.2d 1252, 1254 (9th Cir.1981)).

**DISCUSSION**

CashEdge seeks leave to add allegations that Yodlee failed to disclose material prior art to the patent examiners at the time it applied for the patents at issue. Specifically, CashEdge seeks to allege that Yodlee failed to disclose patent applications submitted by a former competitor, VerticalOne. The relevant prosecution history of the Yodlee and VerticalOne patents is as follows.

Yodlee filed applications for the '073 and '077 patents on June 1, 1999. On October 27, 1999, VerticalOne filed applications for the '783 and '245 patents; the patents both claimed priority to provisional applications filed on October 28, 1998, and May 17, 1999. VerticalOne also filed international patent applications under the Patent Cooperation Treaty ("PCT") for both patents. The PCT application for the '783 patent was published on April 5, 2000.

In July and August of 2000, Yodlee submitted "petitions to make special" in both the '073 and '077 applications. The petitions alleged that VerticalOne was infringing Yodlee's patents. Yodlee did not disclose any prior art in those petitions.

On October 26, 2000, Yodlee filed a renewed peition to make special in the '073 patent application. The petition again alleged that VerticalOne was infringing its patents. As prior art, Yodlee identified PCT patent application WO 00/25227, which was the international version of VerticalOne's '783 patent.

In January 2001, Yodlee merged with VerticalOne. In March 2001 the '077 patent issued. In November 2001 the '783 patent issued, and in June 2002, the '073 and '245 patents issued.

3

CashEdge now seeks to amend its answers and counterclaims to add allegations of inequitable conduct based on Yodlee's failure to disclose VerticalOne's pending applications, and after their merger, Yodlee's failure to disclose its own pending applications. Specifically, with respect to the '077 application, CashEdge seeks to allege that Yodlee failed to disclose VerticalOne's PCT application to the patent examiner during prosecution. *See* Proposed First Amended Complaint ("FAC") ¶ 28.

Similarly, with respect to the '073 patent, CashEdge seeks to allege that Yodlee did not adequately disclose prior art to the PTO examiners during prosecution. *See* FAC ¶ 21. As mentioned above, in its renewed petition to make special in the '073 application, Yodlee did disclose VerticalOne's PCT application as prior art. However, CashEdge maintains that Yodlee improperly failed to disclose to the examiner that the PCT application belonged to VerticalOne. *See id.* CashEdge also seeks to allege that Yodlee failed to disclose VerticalOne's applications for the '783, '245, and other patents. *See* FAC ¶ 22.

With respect to the '783 patent application (originally filed by VerticalOne), CashEdge seeks to allege that after Yodlee acquired VerticalOne, Yodlee failed to disclose the '073 and '077 applications to the PTO during prosecution of the '783 patent. *See* FAC ¶¶ 35-38. Similarly, with respect to the '245 patent application (originally filed by VerticalOne), CashEdge seeks to allege that after Yodlee acquired VerticalOne, Yodlee failed to disclose the '073 and '077 applications to the PTO during prosecution. *See* FAC ¶¶ 43-44.

Yodlee makes three arguments in opposition to CashEdge's proposed amendments: (1) CashEdge unduly delayed in seeking amendment; (2) the proposed amendments will significantly expand the scope of discovery; and (3) the proposed amendments are futile. For the following reasons, the Court finds that none of these three arguments is sufficient to overcome the liberal federal policy in favor of allowing amendment.

**1.     Undue delay**

Yodlee first argues that CashEdge's new theories of inequitable conduct are based entirely on the file histories of the patents at issue, which have been in CashEdge's possession since early in this litigation. CashEdge responds that it only recently received information necessary to bring the proposed

4

1 amendments. Specifically, CashEdge argues that until it gained information regarding the priority dates
2 of the various patents at issue, it could not meet the heightened pleading standards for inequitable
3 conduct claims. While it is a close issue, the Court finds that CashEdge has not clearly unduly delayed
4 in proposing these amendments. As Yodlee argues, the proposed amendments are based largely on the
5 timeline of when each patent application was filed; this information was available to CashEdge early
6 in the litigation. However, priority-date information is also critical to alleging a failure to disclose. The
7 Court therefore agrees with CashEdge that by waiting until it ascertained sufficient information about
8 priority dates, it did not unduly delay in bringing these amendments.

**2.    Prejudice**

Yodlee next argues that "CashEdge's proposed amendment will significantly expand the scope of both fact and expert discovery." Opp. at 6:20-21. Though Yodlee does not say so, this is presumably an argument that it will be prejudiced by CashEdge's amendment. The Court is unpersuaded. The discovery cutoff remains more than a month away, and there is ample time left to explore CashEdge's new theories before trial. Yodlee therefore has not shown how it will be unduly prejudiced by the proposed amendments. Should Yodlee require more time to conduct discovery related to these amendments, the Court will consider a request by Yodlee for an appropriate extension of the discovery cutoff to do so.

**3.    Futility**

Finally, Yodlee argues that CashEdge's proposed amendments would clearly be futile. The Court disagrees. With respect to the '783 and '245 patent applications, Yodlee argues that "CashEdge has no idea what the inventors and prosecutors involved in the '783 and '245 applications knew or did not know." Opp. at 6:15-16. This argument is more appropriate for the summary judgment stage. CashEdge alleges "[o]n information and belief," that "applicants were aware of, and knew the materiality of, the '073 and '077 applications to the '245 application no later than January 16, 2001." FAC ¶ 44; *see also* FAC ¶ 36 (same for '783 application). These allegations are sufficient to support the knowledge requirement of a failure to disclose claim. Whether CashEdge is ultimately able to prove

5

the requisite knowledge is a question for another day, after the close of discovery.

With respect to the '073 application, Yodlee argues that CashEdge's proposed amendment necessarily will fail because CashEdge admits that Yodlee disclosed VerticalOne's PCT application in its renewed petition to make special the '073 application. The Court agrees with Yodlee that this fact may ultimately undermine CashEdge's inequitable conduct defense with respect to the '073 patent. Yodlee has not shown, however, that this fact precludes CashEdge, as a matter of law, from claiming that Yodlee made a material misrepresentation in prosecuting the '073 patent. For example, CashEdge also alleges that Yodlee failed to disclose the '783 and '245 patent applications during prosecution of the '073 patent. Yodlee cites no legal authority establishing that disclosure of the PCT application dispensed with any duty Yodlee might have had to disclose the '783 and '245 applications. At this stage, the Court therefore finds that CashEdge's proposed amendment with respect to the '073 application is not, on its face, futile.

Finally, with respect to the '077 patent, Yodlee argues that CashEdge's proposed amendment is futile because CashEdge cannot show intent to deceive. Again, resolution of Yodlee's argument would require a factual inquiry inappropriate at this stage. CashEdge adequately alleges that Yodlee failed to disclose the PCT application during prosecution of the '077 patent, and did so with intent to deceive. *See* FAC ¶ 24. Whether CashEdge can ultimately prove this allegation is a question for a later stage.

In sum, though there may ultimately be legal or evidentiary shortcomings in CashEdge's proposed amendments, the amendments are not, on their face, futile. Furthermore, Yodlee has not shown that amendment at this stage will significantly prejudice it. The Court therefore must grant CashEdge leave to amend its answer and counterclaims. *See Senza-Gel*, 803 F.2d at 666 ("Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion.").

\\\

**CONCLUSION**

For the foregoing reasons, the Court GRANTS CashEdge's motion for leave to file a First Amended Answer and Counterclaims. [Docket No. 145]

**IT IS SO ORDERED.**

Dated: May 30, 2007

SUSAN ILLSTON
United States District Judge