IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YODLEE, INC., | No. C 05-01550 SI |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE AMENDED FINAL INVALIDITY CONTENTIONS** |
| v. | |
| CASHEDGE, INC., | |
| Defendant. / | |

On August 3, 2007, the Court heard argument on plaintiff Yodlee, Inc.'s motion to strike defendant's Amended Final Invalidity Contentions. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court GRANTS IN PART plaintiff's motion.

**BACKGROUND**

Plaintiff Yodlee, Inc., brought suit against defendant CashEdge, Inc., alleging infringement of six patents; CashEdge subsequently brought its own complaint for declaratory judgment of non-infringement and invalidity, adding three additional Yodlee patents to the suit. Broadly speaking, the nine patents now at issue deal with systems and methods to deliver personal information culled from multiple Internet sources to one central web site. For example, the technologies at issue allow for an end user to monitor information from several types of accounts held with different financial institutions on one website, without having to individually log into and navigate through each individual website associated with each financial institution with which the user has an account.

On July 7, 2006, the Court issued a claim construction order. On February 12, 2007, CashEdge filed its Final Invalidity Contentions. On March 13, 2007, CashEdge changed counsel. According to

CashEdge, on March 30, 2007, its new counsel discovered significant new prior art that it did not include in its Final Invalidity Contentions. Specifically, CashEdge discovered two websites, www.mileagemanger.com and www.maxmiles.com, which allegedly used the technology at issue here as early as 1997. After conducting further investigation, on April 23, 2007, CashEdge informed Yodlee of its intention to amend its invalidity contentions to include the new prior art. CashEdge then filed a motion for leave to amend its Final Invalidity Contentions, which the Court granted. CashEdge filed its Amended Final Invalidity Contentions[1] on May 25, 2007, the Court-ordered deadline for doing so. In response to complaints from Yodlee regarding the completeness of the Amended Contentions, CashEdge filed its Second Amended Final Invalidity Contentions,[2] on June 11, 2007.

On June 29, 2007, CashEdge filed a motion for summary judgment of invalidity. Yodlee's opposition thereto is due on August 14, 2007, and hearing on the motion is currently set for September 21, 2007. The current fact discovery cutoff is August 10, 2007, and a jury trial is scheduled to begin on November 19, 2007. Yodlee has now filed a motion to strike certain portions of the Amended and Second Amended Final Invalidity Contentions.

**LEGAL STANDARD**

The Patent Local Rules provide, in pertinent part: "Amendment or modification of the . . . Final Invalidity Contentions, . . . may be made only by order of the Court, which shall be entered only upon a showing of good cause." Patent L.R. 3-7. "The local patent rules in the Northern District of California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 (Fed.

---

[1] The Amended Final Invalidity Contentions are attached as Exhibit C to the Lamberson Declaration.

[2] The Second Amended Final Invalidity Contentions are attached as Exhibit F to the Lamberson Declaration.

2

Cir. 2006).

"Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (quoting case). The patent local rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro*, 467 F.3d at 1366 n.12 (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)).

## DISCUSSION

### I.  First Amended Final Invalidity Contentions

Yodlee argues that much of the prior art added by CashEdge in its Amended Final Invalidity Contentions – including patents and scholarly articles[3] – goes beyond the scope of amendment allowed by the Court when it granted CashEdge leave to amend. For the following reasons, the Court largely agrees with Yodlee, and accordingly GRANTS IN PART its motion to strike.

In its motion for leave to amend its Final Invalidity Contentions, CashEdge argued that the discovery of past embodiments of two websites, www.mileagemanger.com and www.maxmiles.com, required amendment of their Final Invalidity Contentions. CashEdge also indicated that they expected to shortly find similar web-based prior art. *See* Mot. for Leave at 3:2-4 ("Moreover, CashEdge believes, based on its ongoing investigation, that it will find documents substantiating the existence of additional, travel-related aggregation websites in the same period of time."); 7:7-9 ("As detailed above, the discovery of the MileageManager website has led to a cascade of material prior art that includes not only MaxMiles, but additional websites (such as www.status.com) as to which CashEdge is conducting an ongoing and vigorous investigation.") (emphasis in original).

CashEdge admitted that it "d[id] not have completely satisfactory answer" as to "why this prior art was not discovered sooner," *id.* at 5:15-16, but explained that "[p]art of the problem may be due to

---

[3]On pages 7 and 8 of its Motion, Yodlee provides a list of the amendments to which it objects.

3

the fact that web-based prior art, unlike published patents, scholarly articles, and other more traditional prior art, has never been catalogued scrupulously," *id.* at 5:23-24. "In sum," CashEdge explained, "research of web-based prior art remains a difficult challenge, even to this day, and a successful search often turns – as it did in this case – on sheer luck." *Id.* at 6:10-11. In its reply, CashEdge further noted:

> This is not a case where CashEdge has uncovered a previously undisclosed prior art publication such as a patent, journal article, or doctoral thesis. Such traditional prior art sources can be held in one's hands; their relevance as prior art can be immediately determined from a review of all that is within the proverbial four corners of the document . . . .
>
> Here, by contrast, CashEdge discovered two *website services*, located at the web addresses www.mileagemanager.com [] and www.maxmiles.com []. One *cannot tell* from looking at the 2007 instantiation of these websites what the content or functionality of those sites was ten years earlier. *Only* by examining archival web pages, source code, technical and other documents, and interviewing the individuals associated with these websites, can one discern the content of those sites in 1997 and confirm their relevance as prior art. This may be one reason why these websites were not previously identified as prior art in this and the four other litigation matter pertaining to Yodlee's patents . . . .

Reply ISO Leave at 3:28-4:12 (emphasis in original).

After considering the arguments of the parties, the Court found that good cause existed to allow CashEdge to amend, for four reasons: "First, it appears that the newly discovered prior art may be highly material to the merits of this case." May 17, 2007 Order at 2:23-24. "Second, . . . . CashEdge's request to amend does not appear to be motivated by gamesmanship," and "the Patent Local Rules' concern with parties sandbagging opponents late in the discovery period is also not at issue." *Id.* at 3:6-21.

> Third, because of the nature of internet-based technology, the Court is more sympathetic towards difficulties in identifying prior art than it would be in cases dealing with more traditional technology. As CashEdge points out, there are no comprehensive sources for locating web-based prior art. In many fields, scholarly articles provide an easily searchable source for identifying prior art. In other fields, published patent records provide the principal means for identifying prior art. In the new and rapidly innovating field of internet technology, neither of these sources provide much help. These circumstances do not fully excuse CashEdge's failure to identify this prior art sooner. However, its failure to do so is more understandable than it would be in a technological field where prior art is more easily identified.

*Id.* at 3:22-4:2. "Fourth, and most importantly, Yodlee will not be substantially prejudiced by the proposed amendment. Yodlee has not filed any substantive motion that will be impacted or rendered moot by CashEdge's amendment, and there is ample time left in which to conduct discovery." *Id.* at

4

4:3-5.

Yodlee now argues that despite the emphasis, by both CashEdge and the Court, on the unique nature of web-based prior art, CashEdge has amended its invalidity contentions to include prior art references of the more traditional type, such as scholarly articles and patents. CashEdge, Yodlee argues, fails to show good cause for adding these non-web-based prior art references, at this late stage in the case. The Court agrees with Yodlee. As discussed above, the Patent Local Rules require "a showing of good cause" for the amendment of final invalidity contentions. Patent L.R. 3-7. "Good cause" must include some evidence of a party's diligence, and an explanation for why an amendment was not included in the original. *See O2 Micro*, 467 F.3d at 1366 ("We agree with the Northern District of California that 'good cause' requires a showing of diligence."). In granting CashEdge leave to amend its final invalidity contentions, the Court relied heavily on the unique nature of web-based prior art. Good cause existed to allow amendment largely because past incarnations of web-based technology may be exceptionally difficult to identify.

In contrast, CashEdge has provided – neither in its briefing of the motion for leave to amend, nor in the instant round of briefing – no explanation for why the patents, scholarly articles, and other publications it added in the Amended Contentions could not have been discovered in time to include in the original Final Invalidity Contentions. Thus, in the case of these non-web-based prior art references, at this late stage in the litigation, "the need for certainty in as to the legal theories" outweighs "the right to develop new information in discovery." *O2 Micro*, 467 F.3d at 1366. Accordingly, the Court GRANTS Yodlee's motion to strike, with the exception of the following web-based prior art references: the Ariadne website and application, the SIMS application, and the MIT Web Wrapping/Integrated banking Application (also referred to as the Context Interchange Project).

## II.     Second Amended Final Invalidity Contentions

In a letter dated June 1, 2007, Yodlee complained to CashEdge that its Amended Contentions did not provide all of the information required by the Patent Local Rules. *See* June 1, 2007 Letter (Lamberson Decl., Ex. D). Accordingly, Yodlee urged CashEdge to withdraw the deficient contentions. *See id.* at 3. In response, on June 11, 2007, CashEdge filed its Second Amended Final Invalidity

Contentions, which provided the information Yodlee claimed was missing. In particular, the Second Amended Contentions added the names of the inventors and creators of the prior art products and services. *See* Piepmeier, Ex. G at 8-9. Yodlee now argues that the Court should strike, as untimely, the Second Amended Contentions in their entirety. CashEdge responds that the information at issue had already been disclosed to Yodlee, and that it only filed the Second Amended Contentions in order to satisfy Yodlee's complaints.

The Court DENIES Yodlee's motion to strike the Second Amended Contentions in their entirety. CashEdge had already disclosed to Yodlee all of the information it added to the Second Amended Contentions. *See* Piepmeier Decl. ¶¶ 3-7, Exs. B-F. Yodlee was thus not prejudiced by the untimely amendment, and striking the changes made in the Second Amended Contentions will have no practical effect on this case.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART Yodlee's motion to strike CashEdge's Amended Final Invalidity Contentions.

**IT IS SO ORDERED.**

Dated: August 6, 2007

SUSAN ILLSTON
United States District Judge